**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| BRADFIELD PROPERTIES INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO.: 5:24-cv-1204 |
| | § | |
| THE UNITED STATES SMALL | § | |
| BUSINESS ADMINISTRATION; | § | |
| ISABELLA CASILLAS GUZMAN, in her | § | |
| official capacity as Administrator of the | § | |
| Small Business Administration; JANET | § | |
| YELLEN, in her official capacity as United | § | |
| States Secretary of Treasury; and THE | § | |
| UNITED STATES OF AMERICA, | § | |
| | | |
| Defendants. | | |

## VERIFIED COMPLAINT FOR
## INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, Bradfield Properties Inc. ("Bradfield"), for its Verified Complaint for Injunctive and Declaratory Relief, states and alleges as follows:

## INTRODUCTION

1.     This is an action which seeks judicial review of the legally erroneous and arbitrary and capricious decision by Defendant United States Small Business Administration ("SBA") to deny full forgiveness to Bradfield of a Paycheck Protection Program ("PPP") Loan (the "Loan") it obtained pursuant to the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). The Court should review and reverse the SBA's Final Loan Decision and direct it to fully forgive Bradfield's PPP Loan.

278756352

## PARTIES

2.    Plaintiff Bradfield is a corporation organized under the laws of Texas with its principal place of business at 500 N Loop 1604 E, Ste 100, San Antonio, TX 78232.  Bradfield provides real estate brokerage services throughout Texas, an industry especially effected by the various COVID pandemic shutdown orders of various governments.

3.    Defendant SBA is an independent federal agency created and authorized pursuant to 15 U. S.C. § 633, *et seq*. Pursuant to the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP.

4.    Defendant Isabella Casillas Guzman ("Administrator Guzman") is the Administrator of the SBA and is named as a Defendant in her official capacity only. Because Administrator Guzman is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper Defendant for causes of action brought under the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 702.

5.    Defendant Janet Yellen ("Secretary Yellen") is the Secretary of the United States Department of Treasury and is named as Defendant in her official capacity only. Because Secretary Yellen is the officer with final authority on all matters relating to the Department of Treasury consulting with the SBA for the

implementation of the PPP, Secretary Yellen is a proper Defendant for causes of action brought under the APA. *Id*.

6.      Defendant United States of America is a proper Defendant in APA cases.  *Id*.

## **VENUE AND JURISDICTION**

7.      This action arises out of the arbitrary, capricious, and clear error of facts and law in the SBA's Final Loan Decision and the SBA OHA Denial Decision (each defined below).

8.      Jurisdiction is proper under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States, namely the CARES Act and the APA. As detailed above, Congress enacted the CARES Act to create a special class of SBA small business loans with increased eligibility to make PPP loans available to a larger class of business concerns. In addition, the CARES Act established the methodology for calculating the maximum principal amounts of PPP loans available to borrowers ("Maximum Loan Amount"). Notwithstanding this methodology set out in the CARES Act, the SBA later promulgated regulations limiting the Maximum Loan Amount through publication of an Interim Final Rule ("IFR") in the Federal Register on April 15, 2020, with an explicit effective date of April 15, 2020 ("Effective Date").

9.    Venue is proper in the United States District Court for the Western District of Texas, San Antonio Division, under 28 U.S.C. § 1391(e) because Bradfield's primary place of business and the PPP loan proceeds are located in San Antonio, Texas.

10.    The SBA's review and denial of Bradfield's appeal through the SBA's Office of Hearings and Appeal ("OHA") became final on September 1, 2024, 30 days after service of the Denial Decision.  13 C.F.R. § 134.1211(g).

11.    Bradfield is entitled to judicial review of the Denial Decision. 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court."); § 134.1211(g) ("*Appeal to Federal district court*. Final decisions may be appealed to the appropriate Federal district court only.") (Emphasis in original).

## FACTUAL BACKGROUND

### 1.    The CARES Act

12.    On March 11, 2020, the World Health Organization declared the coronavirus COVID-19 outbreak a global pandemic.

13.    On March 25, 2020, Congress passed the CARES Act to mitigate the economic devastation caused by the COVID-19 pandemic, namely, to protect the paychecks of millions of Americans employed by small businesses.

14.    Included within the CARES Act was the PPP program, which provided the SBA with the funding and authority to operate a loan program specifically targeted and designed to financially assist small businesses and other specified entities with their cash-flow during the COVID-19 pandemic. *See id*. at § 1102; 15 U.S.C. § 636.

15.    The President signed the CARES Act into law on March 27, 2020.

16.    The CARES Act amended Section 7(a) of the Small Business Act to create a new, distinct class of 7(a) loans with specifically applicable rules and requirements. *See e.g.*, *Daniel T.A. Cotts PLLC v. American Bank, N.A.*, 2021 WL 2196636 at *1 (S.D. TX, 2021) (citing 15 U.S.C. § 636(a); 13 C.F.R. § 120.2(a).).

17.    The CARES Act expanded the types of eligible borrowers beyond those typically eligible for 7(a) program loans by adding a Section 636(a)(36)(2)(D) entitled "Increased Eligibility for Certain Small Businesses and Organizations" by explicitly and clearly offering covered loans to "*any business concern*, nonprofit organization, veterans organization, or Tribal business concern . . . if [the borrower] employs not more than the greater of" 500 employees; or the size standard of the number of employees for the industry. 15 U.S.C. § 636(a)(36)(2)(D) (emphasis added).

18.    Section 7(a) of the Small Business Act provides for different eligibility criteria for traditional SBA business loans than does the CARES Act with respect to PPP loans. *See e.g.*, 15 U.S.C § 636(a)(1).

19.    The Small Business Act empowers the SBA to make loans under the pre-existing 7(a) loan programs to "qualified small business concerns" but only if the borrower is unable to "obtain credit elsewhere." *Id.*

20.    The CARES Act eliminated this credit eligibility criterion for PPP loan borrowers. 15 U.S.C § 636(a)(36)(I) ("the requirement that a small business concern is unable to obtain credit elsewhere shall not apply to a PPP loan.").

21.    Under the CARES Act, in contrast to the pre-existing SBA 7(a) loan program, the "Maximum Loan Amount" for a PPP loan was the lesser of $10,000,000.00 or a "Payroll Cost"-based formula. CARES Act, § 1102(a)(2)(36)(E).

22.    Congress specifically defined "Payroll Costs" as "(aa) the sum of payments of any compensation with respect to employees…"; *and* ''(bb) the sum of payments of *any compensation to* or income of a sole proprietor or *independent contractor that is a wage*, commission, income, net earnings from self- employment, or similar compensation and that is in an amount that is not more than $100,000 in 1 year, as prorated for the covered period." CARES Act, § 1102 (a)(2)(36)(A)(viii)(I) (emphasis added).

- 6 -

23.    Congress specifically excluded certain items from its singular definition of "Payroll Costs." CARES Act, § 1102 (a)(2)(36)(A)(viii)(II).

24.    A key feature of the PPP program afforded eligible recipients with the opportunity to have their PPP loans forgiven to the extent loan proceeds were used to cover permitted costs, including but not limited to Payroll Costs. CARES Act § 1106(b), (d).

25.    Section 1106(b) of the CARES Act provides that an "eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of the following costs incurred and payments made during the covered period:

> (1) Payroll Costs.
> 2) Any payment of interest on any covered mortgage obligation (which shall not include any prepayment of or payment of principal on a covered mortgage obligation).
> (3) Any payment on any covered rent obligation.
> (4) Any covered utility payment."

26.    For purposes of PPP loan forgiveness, the term ''Payroll Costs'' has the same meaning as defined in Section 1102(a)(2)(36)(A)(viii) of the Act for calculation of "Maximum Loan Amount." *Id*. at § 1106(a)(8).

**2.    Bradfield Obtains a PPP Loan Consistent with Congressional Intent.**

27.    On April 3, 2020, relying upon the clear language of the CARES Act, Bradfield certified its eligibility for a PPP Loan "*under the rules in effect at the time*"

and submitted a PPP Loan Application to Frost Bank (the "Lender") in the principal amount of $1,933,359.00. S*ee* Exhibit 1 at 1 (emphasis added).

28.    The requested Loan amount was based on multiplying Bradfield's average monthly Payroll Costs of $773,343.78 by 2.5.  *Id.*

29.    Included in Bradfield's calculation of Payroll Costs was compensation paid to employees and commissions paid to its agents based on the plain language of the CARES Act, as well as publicly available information, confirmation with the Lender acting as the SBA's agent in reviewing and approving PPP loan applications, and confirmation from Bradfield's CPA that commissions were to be included in "payroll costs."  *See* CARES Act Section 1102 (a)(2)(36)(A)(viii); *see also* Exhibit 7 ("We spoke to Jason Nelson at ADKF and he confirmed that we were allowed to take our annual gross payroll plus the agents commission expense from 2019 1099's and divide by 12 and multiply by 2.5 to arrive at the average monthly payroll."); Exhibit 8 (email correspondence between Bradfield and Lender confirming Bradfield would include both W-2 and 1099 wages in its Payroll Costs).

30.    Bradfield's calculation of its Payroll Costs was fully disclosed to the Lender and the SBA.

31.    On or about April 6, 2020, Bradfield's Loan Application was approved in the amount requested without objection from either the Lender or the SBA.

32.    Bradfield applied for the PPP Loan for the exact purposes envisioned by Congress in the CARES Act.

33.    On April 16, 2020, Lender funded Bradfield's SBA PPP Loan Number 5644677005.

### 3.    The SBA Promulgates the Interim Final Rule After Bradfield Certifies Its Application

34.    To "carry out" the PPP Loan program as defined by the CARES Act, the SBA was granted emergency rulemaking authority to promulgate regulations to implement the CARES Act as passed by Congress "without regard to the notice requirements under section 553(b) of title 5, United States Code." The CARES Act did not authorize the SBA "'define []' or 'delimit []' statutory terms or concepts, or to 'fill up the details' of a statutory scheme." *See* CARES Act §1114; *see also Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (internal citations omitted).

35.    As of April 3, 2020, the date Bradfield submitted its Loan Application and certified its eligibility, the SBA had yet to publish any regulations in the Federal Register implementing the PPP Loan program.

36.    The Administrative Procedure Act ("APA") clearly provides that notice of a rule is made through publication in the Federal Register. 5 U.S.C. § 553.

37.    Defendants SBA and Treasury published a draft of the IFR ("Draft IFR") on their respective websites on April 2, 2020. See Exhibit 2. The Draft IFR

specifically include the following: "Effective Date: This interim final rule is effective [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]."

38.     The final IFR was not published in the Federal Register until April 15, 2020.

39.     The APA does not provide agencies with authority to make a regulation effective prior to its publication in the absence of other authority, which neither the SBA nor the OHA has identified in the prior proceedings.  Id.

40.     The APA or the CARES Act do not make any provision for the Defendants' websites to substitute for publication in the Federal Register.  Id.

41.     The SBA's first regulation implementing the PPP Loan program published in the Federal Register was the IFR.  85 Fed. Reg. 20811.

42.     By its explicit terms, the IFR stated it was not effective until April 15, 2020 ("Effective Date") and had no retroactive effect.  Id. at 20817.

43.     The IFR included the following relevant "questions and answers," which purported to outline "the key provisions of the PPP:

> 2a. Am I eligible? You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, *and*: … ii. You were in operation on February 15, 2020 *and either had* employees for whom you paid salaries and payroll taxes *or paid independent contractors, as reported on a Form 1099–MISC*. You are *also* eligible for a PPP loan if you are an individual who operates under a sole proprietorship or as an independent contractor or eligible self-employed individual, and you were in operation on February 15, 2020.

278756352

2e.  How do I calculate the maximum amount I can borrow? The following methodology, which is one of the methodologies contained in the Act, will be most useful for many applicants.

i.  Step 1: Aggregate payroll costs (defined in detail below in f.) from the last twelve months for employees whose principal place of residence is the United States.

ii.  Step 2: Subtract any compensation paid to an employee in excess of an annual salary of $100,000 *and/or any amounts paid to an independent contractor* or sole proprietor *in excess* of $100,000 per year.

iii.  Step 3: Calculate average monthly payroll costs (divide the amount from Step 2 by 12).

iv.  Step 4: Multiply the average monthly payroll costs from Step 3 by 2.5.

v.  Step 5: Add the outstanding amount of an Economic Injury Disaster Loan (EIDL) made between January 31, 2020 and April 3, 2020, less the amount of any ''advance'' under an EIDL COVID–19 loan (because it does not have to be repaid).

2h.  Do independent contractors count as employees for purposes of PPP loan calculations? No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan calculation."

*Id*. at 20812-3 (emphasis added).

44.    As such, the SBA, through the IFR declared that an eligible PPP borrower, *inter alia*, was an entity that paid workers salaries and payroll taxes and/or paid Form 1099 independent contractors.  Id. at 2a.

45.    On information and belief, the SBA has never contended that an entity is ineligible for a PPP loan if its workers are only 1099 independent contractors.

46.     Separately and in addition to the category of borrowers above, the IFR provides that individuals operating as sole proprietors and/or independent contractors are eligible borrowers.  Id.

**4.     The SBA Wrongfully Denies Full Forgiveness of Bradfield's PPP Loan**

47.     On or about September 14, 2021, having expended the Loan proceeds on Payroll Costs, Bradfield applied for full forgiveness of the Loan ("Forgiveness Application").

48.     The Lender approved the Forgiveness Application for full forgiveness and submitted it to the SBA for approval on September 14, 2021.

49.     Bradfield's average monthly payroll increased from $773,343.78 at the time of application to $879,400.84 at the time Bradfield submitted its Forgiveness Application.

50.     On July 28, 2023, Bradfield received a notification (the "Notification") from the Lender stating that the SBA was "considering recommending a Partial Forgiveness" on the basis that the "loan amount is not supported."  The Notification came through the SBA portal to the Lender.  Exhibit 4**.**  The Notification did not include any SBA requests for additional information from Bradfield.  Id.

51.     On April 4, 2024, Bradfield received a Final Loan Decision from the SBA stating that only $530,957.78 of its $1,933,359.00 PPP loan would be forgiven

on the basis that the Maximum Loan Amount was incorrectly calculated at the time the Loan was approved. Exhibit 3.

52.    Without any explanation beyond a nominal reference to Bradfield's 2019 W-3 statement, the Final Loan Decision reduced Bradfield's gross wages from $9,280,125.36 (or $773,343.78 average monthly wages) to $2,548,124.06 (or $212,343.67 average monthly wages), which recalculation significantly reduced Bradfield's Maximum Loan Amount.

53.    IRS Form W-3 is a tax form used by employers to report combined employee income to the Internal Revenue Service ("IRS") and the Social Security Administration.

54.    The Final Loan Decision did not cite any facts, statutes, or regulations supporting its conclusion that Bradfield's Maximum Loan Amount should have been $530,957.78, i.e., 2.5 times the average monthly payroll of $212,343.67.

55.    The Final Loan Decision's recalculation of Bradfield's Maximum Loan amount resulted in Bradfield being denied forgiveness of $1,402,401.22 of the Loan principal, which amount Bradfield is now purportedly liable to repay to the Lender.

**5.    The Denial Decision of The SBA Office of Hearings & Appeals Ignores the Clear Errors in the Final Loan Decision**

56.    On May 9, 2024, Bradfield timely appealed the SBA's Final Loan Decision to SBA's Office of Hearings and Appeals ("OHA"), alleging that that the Final Loan Decision was based on clear errors of fact and law, namely that the

CARES Act did not exclude amounts paid to independent contractors from the definition of Payroll Costs when calculating the Maximum Loan Amount. *See* Exhibit 5.

57.    The SBA filed a Response to the Appeal, arguing that the SBA's Draft IFR posted on the SBA website on April 2, 2020, was enforceable against Bradfield.

58.    The SBA *post hoc* argument regarding the enforceability of the Draft IFR was not referenced as a reason for forgiveness denial in Final Loan Decision

59.    The SBA's Draft IFR enforceability argument conflicts with the express words of the Draft IFR which explicitly and unambiguously stated it was not effective until the date of publication in the Federal Register. Exhibit 2.

60.    In further conflict with the SBA's Draft IFR enforceability argument, the IFR was published in the Federal Register on April 15, 2020, including the explicit statement that "[t]his interim final rule is effective April 15, 2020." 85 Fed. Reg. 20811*; see also In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at 6 (Bankr. W.D. Tenn. June 2, 2020) ("The first Interim Final Rule was published on April 15, 2020.").

61.    The IFR further provides that "SBA has drafted this rule, to the extent practicable, *in accordance with the standards set forth in section 3(a) and 3(b)(2) of the Executive Order 12988*, to minimize litigation, eliminate ambiguity, and reduce burden. The rule has *no preemptive or retroactive effect*." (Emphasis added).

62.    "<u>General Duty to Review Legislation and Regulations</u>. Within current budgetary constraints and existing executive branch coordination mechanisms and procedures established in OMB Circular A–19 and Executive Order No. 12866, each agency promulgating new regulations, reviewing existing regulations, developing legislative proposals concerning regulations, and developing new legislation shall adhere to the following requirements: … (2) that the regulation, as appropriate— (D) *specifies in clear language the retroactive effect*, if any, to be given to the regulation." Executive Order 12988, § 3(b)(2) (emphasis added).

63.    On August 2, 2024, the OHA denied Bradfield's Appeal of the Final Loan Decision (the "Denial Decision"), adopting without explanation the SBA's assertion that the Draft IFR "was applicable to <u>all</u> PPP loan applications – including Appellant." *See* Exhibit 6 at 8.

64.    Notwithstanding that both the Draft IFR and the IFR set out a clear and unequivocal Effective Date with no retroactive effective, the OHA cavalierly dismissed these facts as not "persuasive."

65.    The OHA declared that it was unpersuaded by Bradfield's "formidable" arguments which relied upon the plain language of the CARES Act and the IFR. Instead, the OHA found that Bradfield's plain reading of the CARES Act "*appears* at odds with the Congressional intent behind the PPP, as well as the structures of the CARES Act." Exhibit 6 at 8 (emphasis added).

278756352

66.    The OHA references to "Congressional intent" do not cite to any published legislative history.

## STANDARD OF REVIEW

67.    Pursuant to the APA, a court reviewing a final agency action must "hold unlawful and set aside agency action, findings, and conclusions to be found to be ... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

68.    The APA further provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

69.    The SBA OHA Denial Decision denying the Appeal meets the requirements of final agency action subject to review.

## COUNT I

**THE CARES ACT DOES NOT DELEGATE DISCRETIONARY AUTHORITY TO THE SBA TO REDEFINE TERMS EXPLICITY AND FULLY DEFINED BY CONGRESS**

70.    Bradfield incorporates the preceding paragraphs as if fully set forth herein.

71.    On April 3, 2020, Bradfield submitted its PPP Loan Application to the Lender, certifying its eligibility "under the rules in effect at the time".

- 16 -

72.     At the time Bradfield submitted its PPP Loan Application, the SBA had not published in the Federal Register any rules or regulations implementing the PPP program.

73.     On April 6, 2020, Bradfield's PPP Loan Application was approved.

74.     At the time Bradfield' PPP Loan Application was approved; the SBA had not published in the Federal Register any rules or regulations implementing the PPP program.

75.     Bradfield was eligible for its PPP Loan amount at the time it applied for its PPP Loan and at the time its Loan Application was approved.

76.     SBA has never alleged or even suggested that Bradfield applied for or used the Loan in a dishonest manner or in bad faith.

77.     Bradfield used the PPP Loan proceeds for Payroll Costs and other eligible expenses as permitted by the CARES Act.

78.     After it properly and lawfully utilized its Loan proceeds based on the "rules in effect at the time" of its Loan Application, Bradfield applied for forgiveness on July 23, 2021.

79.     The SBA issued its Final Loan Decision denying full forgiveness of the Loan on April 4, 2024, purportedly on the basis that Bradfield's Maximum Loan Amount was calculated by including amounts paid to independent contractors.

80.     Via the IFR, the SBA improperly redefined the Congressionally defined term "Payroll Costs" by declaring that borrowers could not include amounts paid to independent contractors when calculating Maximum Loan Amounts.

81.     The APA authorizes judicial review of federal agency actions. 5 U.S.C § 702.

82.     The CARES Act, as amended, provides that all such "*eligible recipient[s] shall be eligible for forgiveness of indebtedness*" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added).

83.     The APA directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(a).

84.     Congress specifically defined "Payroll Costs" as "(aa) the sum of payments of any compensation with respect to employees…"; *and* ''(bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self- employment, or similar compensation and that is in an amount that is not more than $100,000 in 1 year, as prorated for the covered period." CARES Act, § 1102 (a)(2)(36)(A)(viii) (emphasis added).

85.    Nevertheless, the SBA published the IFR declaring that independent contractors do not count for purposes of calculating a borrower's PPP Maximum Loan Amount, implicitly, if not specifically, arguing that Congress intended that the conjunctive "and" between subclauses (aa) and (bb) of the statutory definition of Payroll Costs actually meant the disjunctive "or," thereby creating two separate definitions of Payroll Costs not contained in the CARES Act, one applicable to employees and one applicable to independent contractors.

86.    Following the Supreme Court's holding in *Loper Bright*, courts may no longer defer to agency interpretation of statutes when reviewing agency decisions. *Loper Bright,* 144 S. Ct. 2244 (2024).  Specifically, the Supreme Court held that reviewing courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."  *Id.* at 2273.

87.    Some statutes "expressly delegate []" to an agency the authority to give meaning to a particular statutory term.  Others empower an agency to prescribe rules to "fill up the details" of a statutory scheme, or to regulate subject to, such as "appropriate" or "reasonable."  *Id.* (internal citations omitted.)

88.    Congress, through enactment of the CARES Act, did not authorize the SBA to "give meaning" or to "fill up the details" to the statutorily defined term "Payroll Costs" in calculating the Maximum Loan Amount available to PPP borrowers.

89.    Specifically, Congress did not authorize the SBA to take a single cohesive definition of Payroll Costs and convert it into two separate definitions applicable to different borrowers to conform the CARES Act to a presumed Congressional intent.  Exhibit 6.

90.    As a result, the SBA's partial denial of forgiveness of the Loan on the basis that its Maximum Loan Amount calculation included 1099 payments made to real estate agents was arbitrary and capricious and must be overturned.

91.    Bradfield is entitled to an order declaring Defendants' actions to redefine terms explicitly defined in the CARES Act resulting in less than full forgiveness of Bradfield's PPP Loan are not in accordance with law.

92.    Accordingly, Bradfield is entitled to a permanent injunction enjoining Defendants from not fully forgiving Bradfield's Loan on the basis that its PPP Loan exceeded the Maximum Loan Amount permissible under the IFR.

## COUNT II

**THE SBA'S REDEFINITION OF PAYROLL COST CANNOT BE JUSTIFIED AS PROPER INTERPRETATION OF THE CARES ACT**

93.    Bradfield incorporates the preceding paragraphs as if fully set forth herein.

94.    Even if the CARES Act authorized the SBA to limit the Maximum Loan Amount available to PPP borrowers to implement presumed Congressional through its own interpretation of the statutory term "Payroll Costs," the SBA's

- 20 -

interpretation fails to "employ [] traditional tools of statutory construction." *Loper Bright* at 2264 (internal citations omitted).

95.    The SBA and OHA acted arbitrarily, capriciously, and contrary to law by redefining the word "and" to mean "or" in the plain language definition of "Payroll Costs" of the CARES Act to find Bradfield ineligible for full loan forgiveness. CARES Act, § 1102 (a)(2)(36)(A)(viii)(I).

96.    Despite Congress already providing an unambiguous list of excluded categories of costs that a borrower "shall not include" in calculating "Payroll Costs," the SBA further excluded payments made to independent contractors from "Payroll Costs." CARES Act, § 1102 (a)(2)(36)(A)(viii)(II).

97.    The OHA arbitrarily and capriciously ruled that Congress did not "say what it means and means what it says" in finding that the CARES Act contains two separate "Payroll Costs" definitions. *Norfolk S. Ry. v. Perez*, 778 F.3d 507, 12 (6th Cir. 2015).

98.    The OHA held that "CARES Act provides expressly that an independent contractor may also receive its own PPP loan . . . Accordingly, there is a separate definition of "payroll costs" specific to sole proprietors and independent contractors."

99.    To support its redefinition of the CARES Act's statutory definition of "Payroll Costs," the OHA arbitrarily and capriciously concocted a presumed

Congressional intent with no citation to the legislative record.  The OHA argued that, based on its presumption, Congress could not possibly have intended "both an employer and an independent contractor to receive a PPP Loan."

100.    In reaching this decision, the OHA ignores that nowhere in the CARES Act did Congress state that a borrower who happens to engage independent contractors could not borrow funds to keep them engaged.

101.    The OHA ignored the possibility Congress fully understood, and did not object, when defining the term "Payroll Costs" that an employer would seek a PPP loan to continue employing its independent contractors while those independent contractors also applied for a PPP loan.  Congress could have easily created a clearly stated prohibition rather than hope the SBA would employ its Rube Goldberg-ish interpretation to the Act.

102.    The effect of the SBA and OHA's interpretation of "Payroll Costs" is to re-write a statute in accordance with a presumed Congressional intent or, more likely, its own view of how the PPP program should have been enacted.

103.    The SBA's decision to exclude commissions paid to independent contractors in calculating the Bradfield's Maximum Loan Amount was contrary to clear Congressional intent as clearly and unambiguously expressed in the CARES Act.

104.    The SBA's own IFR exposes the inconsistency in its interpretation of Payroll Costs. On one hand, the SBA claims that an entity is eligible to apply for a PPP loan if it "*paid independent contractors, as reported on a Form 1099–MISC.*" *See* IFR at 2a. Yet, the SBA and OHA denied Bradfield full forgiveness of its Loan *because* it paid independent contractors.

105.    In other words, the SBA's position is that an entity whose workers are all paid as 1099 independent contractors was eligible to receive a PPP Loan, but that same entity was not eligible to have its loan forgiven.

106.    The SBA's decision, as expressed in the Final Loan Decision and the Denial Decision, to redefine the clear statutory term "Payroll Costs" to deny full forgiveness of Bradfield's Loan is clearly erroneous and an abuse of authority and discretion.

## <u>COUNT III</u>

### SBA IS NOT AUTHORIZED TO RETROACTIVELY APPLY THE IFR TO BRADFIELD

107.    Bradfield incorporates the preceding paragraphs as if fully set forth herein.

108.    Even if the CARES Act delegated to the SBA the authority or discretion to limit eligibility of PPP loan borrowers by regulation beyond the eligibility criteria in the Act, or to redefine terms defined by the Act, the retroactive application of the IFR to Bradfield's Loan was a clear error of law.

109. The SBA's conclusion that the IFR had retroactive application to Bradfield's Loan, via the Final Loan Decision and the Denial Decision, is contrary to the clear language of the Draft IFR and the IFR, which unequivocally state that the IFR is not effective until publication in the Federal Register and will have no retroactive effect. Exhibit 6 at 18; Exhibits 3 and 5.

110. The SBA, in its pleading filed with the OHA, rejected the IFR's explicit retroactivity prohibition through its claim the IFR merely "clarified" the CARES Act, a power not granted to the SBA by Congress in express terms.

111. The OHA adopted the SBA's argument, adding that publication on the Treasury's website on April 2, 2020, meant Bradfield "had notice of [the Draft IFR] at the time it applied for the PPP loan on April 3, 2020." Exhibit 6.

112. The OHA and SBA's clarification argument effectively declares the CARES Act ambiguous, thereby requiring deference to the SBA's interpretation under the now overturned *Chevron* doctrine. See *Loper Bright*, infra.

113. Without its PPP Loan, Bradfield likely would have been forced to shut down, resulting in layoffs to its employees and real estate agents.

114. Given the choice to shut down or be burdened with significant debt, Bradfield would not have applied for, nor accepted, the Loan.

115.    Accordingly, Bradfield is entitled to an order declaring Defendants' actions to retroactively apply the IFR to Bradfield's Loan as not in accordance with law.

116.    Bradfield is further entitled to an order declaring the Loan to be fully forgiven based on the terms of the CARES Act.

## COUNT IV

**BRADFIELD IS ENTITLED TO A PRELIMINARY INJUNCTION PROHIBITING THE SBA OR LENDER FROM SEEKING REPAYMENT OF BRADFIELDS LOAN**

117.    Bradfield incorporates the preceding paragraphs as if fully set forth herein.

118.    As stated above, the Final Loan Decision and the Denial Decision became final on September 1, 2024, ending the deferred repayment period for the Loan set forth in the SBA regulations.

119.    Bradfield requests this Court issue a preliminary injunction preventing Defendants or its delegees, namely Lender, from requiring repayment under the Loan, until such a time as an evidentiary hearing may be heard and the issuance of a final judgment by the Court on the merits of this action.

120.    Bradfield properly sought out Congress' offered respite under the CARES Act and the PPP program, complying with all requirements at the time of submittal and approval of its Loan Application.

121.    Defendants' arbitrary and capricious actions have transformed Congress' intended COVID 19 lifeline into an unwanted financial anchor for Bradfield.

122.    The SBA, through its impermissible and *post hoc* redefining of statutorily defined terms, as well as retroactive application of such redefined terms, has saddled Bradfield with additional debt and exacerbated the exact problem the CARES Act and PPP loans were implemented to alleviate.

123.    Bradfield has satisfied the four-part test required to obtain a preliminary injunction: (1) Bradfield is likely to succeed on the merits of its above claims; (2) Bradfield will likely suffer irreparable harm if the Court does not grant a preliminary injunction; (3) the balance of both equities and hardships is in Bradfield's favor; and (4) a preliminary injunction would be in the public interest.

124.    There is a substantial likelihood of success on the merits of this case, as Bradfield has demonstrated that the actions of SBA to deny full forgiveness of the Loan are arbitrary, capricious, and not in accordance with fact or law.

125.    At a trial on the merits, Bradfield will prove that the Loan should be forgiven in full.

126.    The injury faced by Bradfield is substantial and irreparable. The burden of temporarily ceasing payments under the PPP Loan until final judicial review is

outweighed by the benefit of protecting Bradfield from severe economic distress caused by arbitrary Government action during the pendency of these proceedings.

127. Moreover, requiring repayment during the resolution of this matter would increase administrative costs should the Court enter a judgment in Bradfield's favor and against the Defendants.

128. Granting the relief requested would not adversely affect public policy or public interest because such temporary suspension of payments would only further extend the automatic deferment period triggered upon filing a forgiveness appeal with the OHA. 13 CFR § 134.1202.

129. Once these elements are proved, Bradfield requests this Court enter an Order permanently enjoining Defendants' and Lender from seeking collection of the Loan.

## COUNT V

### BRADFIELD IS ENTITLED TO REIMBURSEMENT OF ITS REASONABLE COSTS AND ATTORNEYS' FEES

130. Bradfield incorporates the preceding paragraphs as if fully set forth herein.

131. The recovery of attorneys' fees for declaratory relief is authorized by the Equal Access to Justice Act. 28 U.S.C. § 2412.

132. Bradfield is a small business.

133.    Defendants' actions in denying full forgiveness of Bradfield's Loan is contrary to fact and law, and therefore are not substantially justified.

134.    As a result of Bradfield has been required to obtain legal counsel to bring this suit and is therefore entitled to reasonable and necessary attorney' fees that may be awarded by this Court.

## **CONCLUSION**

**WHEREFORE**, Bradfield respectfully requests the Court enter a judgment in its favor and against Defendants, granting the following relief:

i.    With regard to Count I, entry of a judgment that: (1) Congress did not authorize the SBA to take a single cohesive definition of "Payroll Costs" and convert it into two separate definitions applicable to different borrowers; (2) permanently enjoin the SBA from excluding amounts paid to independent contractors from the calculation of Bradfield's Maximum Loan Amount; and (3) for such other, further and different relief as the Court deems just and equitable.

ii.    With regard to Count II, entry of a judgment that: (1) the SBA's actions in creating by regulation additional PPP loan eligibility criteria and/or redefining the statutorily created term "Payroll Costs" are arbitrary and capricious; (2) permanently enjoins the SBA from excluding amounts paid to independent contractors from the calculation of Bradfield's

278756352

Maximum Loan Amount; and (3) for such other, further and different relief as the Court deems just and equitable.

iii. With regard to Count III, entry of a judgment that: (1) the SBA's retroactive application of the IFR in the Final Loan Decision, as incorrectly affirmed in the Denial Decision, was a clear error of law; (2) the SBA's decision is arbitrary and capricious; (3) permanently enjoins the SBA from finding Bradfield ineligible for full forgiveness of its Loan based on the IFR; and (4) for such other, further and different relief as the Court deems just and equitable;

iv. With regard to Count IV, entry of a judgment granting a Temporary Restraining Order and for such other, further and different relief as the Court deems just and equitable.

v. With regard to Count V, (1) an award of costs in this suit; (2) an award of reasonable and necessary attorneys' fees; and (3) all such other and further relief, either at law or in equity, to which Bradfield may show itself to be justly entitled.

Dated: October 23, 2024

Respectfully submitted,


CLARK HILL PLC

By:
Charlie Hayes
Texas Bar No. 24116496
2301 Broadway
San Antonio, Texas, 78215
Telephone: 210-250-6051
Facsimile: 210-258-2702
chayes@clarkhill.com

Bret S. Wacker (*Pro Hac Vice* forthcoming)
J. Chris White (*Pro Hac Vice* forthcoming)
730 17th Street, Suite 420
Denver, CO 80202
Telephone:  202-772-0906
Facsimile:  202-772-0905
bwacker@clarkhill.com
jwhite@clarkhill.com

ATTORNEYS FOR PLAINTIFF

278756352

## LIST OF EXHIBITS

Exhibit 1        Bradfield PPP Loan Application

Exhibit 2        IFR

Exhibit 3        SBA Final Loan Decision

Exhibit 4        Notification of Potential Denial

Exhibit 5        Bradfield OHA Appeal

Exhibit 6        OHA Appeal Denial Decision

Exhibit 7        Email on CPA Opinion on Independent Contractors

Exhibit 8        Frost Bank Email on Independent Contractors

278756352

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 18, 2024

_____
James Pfirrmann, President
Bradfield Properties Inc.

278756352