**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| BRADFIELD PROPERTIES INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 5:24-cv-1204-FB |
| ) | |
| THE UNITED STATES SMALL ) | Hon. Fred Biery |
| BUSINESS ADMINISTRATION; KELLY ) | |
| LOEFFLER, in her official capacity as ) | |
| Administrator of the Small Business ) | |
| Administration; SCOTT BESSENT, in his ) | |
| official capacity as United States Secretary ) | |
| of Treasury; and THE UNITED STATES ) | |
| OF AMERICA, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**PLAINTIFF BRADFIELD'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

CASE NO.: 5:24-cv-1204-FB

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ 3

    Cases ................................................................................................................................. 3

    Statutes and Rules ............................................................................................................ 3

INTRODUCTION ................................................................................................................... 4

SUMMARY OF FACTS……………………………………………………………………..5

STANDARD OF REVIEW……………………………………………………………………8

ARGUMENT ............................................................................................................................ 9

    I. The SBA OHA Denial Decision is a Final Agency Action........................................ 9

    II. The SBA OHA Denial Decision is a Final Agency Action .................................... 10

    III. Bradfield has Article III Standing.......................................................................... 13

    IV. Bradfield's Section 704 of the APA claim is valid................................................ 14

CONCLUSION/PRAYER ..................................................................................................... 17

EXHIBIT LIST…………………………………………………………………………..18

CERTIFICATE OF CONFERFENCE  ................................................................................. 19

CERTIFICATE OF SERVICE ............................................................................................. 20

CASE NO.: 5:24-cv-1204-FB

# TABLE OF AUTHORITIES

**Cases**

*Amin v. Mayorkas*, 24 F.4th 383 (5th Cir. 2022) ........................................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ...................................................... 7

*Biden v. Nebraska*, 600 U.S. 477 (2023) ................................................................... 16

*Essintial Enterprise Solutions, LLC v. U.S. Small Bus. Admin.*, No. 25-1367 (3d Cir. filed Feb. 28, 2025) .................................................................................................. 12, 16

*Fort Bend Cnty. v. United States Army Corps of Eng'rs*, 59 F.4th 180 (5th Cir. 2023) ................. 8

*Inclusive Communities Project, Inc. v. Dep't of Treasury,* 946 F.3d 649 (5th Cir. 2019) ............ 14

*Kling v. Hebert*, 60 F.4th 281 (5th Cir.) ..................................................................... 8

*Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013) .......................................................... 9

*R.J. Reynolds Vapor Co. v. Food & Drug Admin.*, 65 F.4th 182 (5th Cir. 2023) ............ 12

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................................ 9

*Seville Indus., L.L.C. v. United States Small Bus. Admin.*, 144 F.4th 740 (5th Cir. 2025) ......... 12

*Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673 (5th Cir. 2007) .................... 8

*Syncor Int'l Corp. v. Shalala*, 127 F.3d 90 (D.C. Cir. 1997) ..................................... 15

*Tex. v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433 (5th Cir. 2019) ................... 15

*Tex. v. United States*, 809 F.3d 134 (5th Cir. 2015), ............................................. 8, 9

*Tex. v. United States Envt'l. Prot. Agency*, 156 F.4th 523 (5th Cir. 2025) ................... 9

*Transunion LLL v. Ramirez,* 594 U.S. 413 (2021). .................................................... 13

*W. Virginia v. United States Envt'l. Prot. Agency,* 597 U.S. 697 (2022) .................... 16

**Statutes**

15 U.S.C. § 636(a)(36)(2)(D) ............................................................................... 6, 11

15 U.S.C. § 636(a)(36)(A)(viii) .................................................................................. 7

15 U.S.C. § 636(a)(36)(A)(viii)(I) ............................................................................. 8

15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb) ...................................................................... 7

15 U.S.C. § 636(a)(36)(G). ....................................................................................... 8

15 U.S.C. § 636m(b). ............................................................................................... 7

15 U.S.C. §636(a)(36)(B). ....................................................................................... 6

15 U.S.C. §636(a)(36)(E) ......................................................................................... 6

28 U.S.C.§ 1331 ..................................................................................................... 10

5 U.S.C. § 704 ................................................................................................... 8, 9, 14

5 U.S.C. § 706 ....................................................................................................... 8, 9

5 U.S.C. § 706(2) ................................................................................................... 15

5 U.S.C. § 706(2)(A), (C). ......................................................................................... 8

U.S.C. § 636(a)(1) .................................................................................................... 5

**Regulations**

13 C.F.R. § 120.100(a)-(e) ......................................................................................... 5

13 C.F.R. § 120.110. ............................................................................................... 11

13 C.F.R. § 134.1211(b) .......................................................................................... 10

13 C.F.R. § 134.1211(g) ..................................................................................... 10, 15

13 C.F.R. § 120.110 ................................................................................................. 5

CASE NO.: 5:24-cv-1204-FB

NOW COMES Plaintiff Bradfield Properties Inc. ("Bradfield" or "Plaintiff"), by and through its attorneys, Clark Hill PLC, and files its Response in Opposition ("Response") to the Motion to Dismiss (the "Motion") (Doc. 28) of Defendants U.S. Small Business Administration ("SBA"); Kelly Loeffler, in her official capacity as Administrator of the U.S. Small Business Administration; Scott Bessent, in his official capacity as Secretary of the U.S. Department of Treasury; and the United States of America (collectively, "the Defendants"), showing the Court as follows:

### INTRODUCTION

Bradfield opposes Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Amended Complaint") (Doc. 25) because it plausibly alleges that the SBA exceeded its statutory authority under the Coronavirus Aid, Relief, and Economic Security Act's ("CARES Act") Paycheck Protection Program ("PPP") and acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"). The SBA Office of Hearings and Appeals' ("OHA") denial of Bradfield's PPP appeal ("Denial Decision") is a final agency action reviewable under both the APA and the SBA's own regulations, which expressly authorize appeal of OHA PPP Final Loan Decisions to federal district court. Further, the SBA's Interim Final Rule — specifically its "Ineligibility Rule" excluding businesses that employ only independent contractors — is itself a final, binding agency action that directly conflicts with the CARES Act's clearly expanded loan eligibility provisions. Bradfield has Article III standing because the SBA's unlawful interpretation directly caused the recalculation of Bradfield's PPP loan amount and denial of full forgiveness, resulting in economic harm through Bradfield's forced repayment of its PPP loan. Because the Amended Complaint plausibly alleges statutory overreach, arbitrary and capricious

CASE NO.: 5:24-cv-1204-FB

decision-making, and the absence of any adequate alternative remedy, Defendants fail to satisfy their burden under Rules 12(b)(1) and 12(b)(6), and the Motion to Dismiss must be denied.

## SUMMARY OF FACTS

On March 25, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to mitigate the looming economic devastation caused by the COVID-19 pandemic by protecting the paychecks of millions of Americans employed by small business. The CARES Act includes the Paycheck Protection Program ("PPP"), which provided funding and authority to the Small Business Administration ("SBA") to operate a loan program to assist small businesses and other specified entities who were impacted by the COVID-19 pandemic. (Doc. 28 ¶ 14-15; *see also* Doc. 28 p. 3). The CARES Act created a new, distinct temporary class of the SBA's historical 7(a) program loans with specifically applicable rules and requirements. (Doc. 28 ¶ 17). To be eligible for the 7(a) program loan, "a small business applicant must: (a) Be operating a business (except for loans to Eligible Passive Companies); (b) Be organized for profit; (c) Be located in the United States; (d) Be small under the size requirements of part 121 of this chapter (including affiliates)…; and (e) Be able to demonstrate a need for the desired credit." 13 C.F.R. § 120.100(a)-(e); (*see also* Doc. 18 ¶ 18).

The eligibility for 7(a) program loans was not restricted to qualified small business concerns who employ at least one worker for whom the small business reports their annual earnings to the Internal Revenue Service ("IRS") using IRS Form W-2 (a "W-2 Employee). 15 U.S.C. § 636(a)(1); 13 C.F.R. §§ 120.100, 120.110. The CARES Act specifically expanded the types of eligible borrowers beyond those eligible for 7(a) program loans by adding a Section 636(a)(36)(2)(D) entitled "Increased Eligibility for Certain Small Businesses and Organizations" which explicitly and clearly offered covered loans to "*any business concern*, nonprofit

organization, veterans organization, or Tribal business concern…if [the borrower] employs not more than the greater of" 500 employees; or the size standard of the number of employees for the industry." 15 U.S.C. § 636(a)(36)(2)(D) (emphasis added); (Doc. 18 ¶ 21). Congress directed the SBA to implement the PPP loan program under the existing Section 7(a) loan program and authorized the SBA to offer PPP loans "under the same terms, conditions, as processes as a loan made under Section 7(a). 15 U.S.C. §636(a)(36)(B). Congress specifically chose, and directed the SBA, to operate the PPP loan program under the 7(a) program rules that already existed except as modified by the CARES Act. (Doc. 25 ¶26). The CARES Act did not change the existing 7(a) loan program to limit PPP program eligibility to those who only employ W-2 Employees or a minimum number of W-2 Employees. 15 U.S.C. §636(a)(36)(E). Further, the CARES Act did not authorize the SBA to implement or interpret rules, regulations or policies which restricted PPP loan eligibility.

Under the CARES Act, the maximum loan amount for PPP was the lesser of $10,000,000.00 or a "Payroll Cost"-based formula. 15 U.S.C. §636(a)(36)(E). Congress defined "Payroll Cost" as "(aa) the sum of payments of any compensation with respect to employees…" _and_ "(bb) the sum of payments of _any compensation to or income of a sole proprietor or independent contractor that is a wage_, commission, income, net earnings from self-employment, or similar compensation and that is an amount that is not more than $100,000 in 1 year, as prorated for the covered period. 15 U.S.C. § 636(a)(36)(A)(viii)(I) (emphasis added).  The term "Payroll Costs" appears nowhere in the CARES Act as a PPP loan eligibility criterion.

The CARES Act provides that eligible recipients are able to receive forgiveness of indebtedness on a PPP loan in an amount equal to the sum of the following costs incurred during the covered period: (1) Payroll Costs, (2) any payment of interest on any covered mortgage

6

obligation (which shall not include any prepayment of or payment of principal on a covered mortgage obligation); (3) any payment on any covered rent obligation, (4) any covered utility payment. 15 U.S.C. § 636m(b).

The CARES Act was clear that it was to expand 7(a) program eligibility for PPP loans beyond the criteria used traditionally. Nevertheless, the SBA adopted the Interim Final Rule ("IFR"), which it interpreted to improperly redefine PPP Loan eligibility by excluding entities which did not employee any W-2 Employees. These entities, according to the SBA, were ineligible to receive PPP Loans because they had no Payroll Costs for such W-2 Employees. 15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb). Doc 25 ¶ 36. In the Amended Complaint and herein this Response, for drafting ease and clarity, Bradfield has referred to this agency-created limitation to PPP loan eligibility the "Ineligibility Rule."

On April 3, 2020, Bradfield certified its eligibility for "a PPP Loan "*under the rules in effect at the time*" and submitted a PPP Loan Application to Frost Bank (the "Lender") in the principal amount of $1,933,359.00. (Doc. 25 ¶39 (emphasis added)). The Loan amount was based on multiplying Bradfield's average monthly Payroll Costs by $773,343.78 by 2.5. *Id* at ¶40. Bradfield included compensation paid to employees and commissions paid to its agents based on the language of the CARES Act, publicly available information, confirmation with the Lender, and confirmation from Bradfield's CPA that commissions were to be included in "payroll costs." *See* 15 U.S.C. § 636(a)(36)(A)(viii); (*see also* Doc. 25 ¶ 41). Furthermore, the calculation included compensation paid to 1099 Workers reported on IRS Form 1099 ("1099 Workers") and was fully disclosed to Lender and the SBA and the application was approved. *Id.* ¶¶ 42, 43. Bradfield applied for the PPP Loan consistent with the stated purpose of the CARES Act, i.e. "to retain workers and

CASE NO.: 5:24-cv-1204-FB

maintain payroll or make mortgage payments, lease payments, and utility payments." 15 U.S.C. § 636(a)(36)(G).

## STANDARD OF REVIEW

In an action brought under the Administrative Procedure Act ("APA"), a district court reviews an agency's final action under the standards set forth in 5 U.S.C. § 706. The court determines whether the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). While APA claims are ordinarily resolved on the administrative record at summary judgment, a defendant may seek early dismissal under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6) —and the court evaluates such motions under the ordinary pleading standards. *See*, *e.g., Fort Bend Cnty. v. United States Army Corps of Eng'rs*, 59 F.4th 180 (5th Cir. 2023) (applying Rule 12(b)(6) to APA claims).

At the motion to dismiss stage, the Court must accept all well-pleaded factual allegations as true and construe them strictly against the movant and liberally in favor of the non-moving party. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). Critically, when evaluating a 12(b)(1) motion in the APA context, courts have jurisdiction so long as the plaintiff challenges a "final agency action" for which there is "no other adequate remedy in a court." 5 U.S.C. § 704; *Tex. v. United States*, 809 F.3d 134, 177–78 (5th Cir. 2015), as revised (Nov. 15, 2015). Because the existence of final agency action is often intertwined with the merits, dismissal at the pleading stage is disfavored. *See Kling v. Hebert*, 60 F.4th 281 at fn 2 (5th Cir.) ("where the jurisdictional question is sufficiently intertwined with the merits, determination at the 12(b)(1) stage is inappropriate."). Further, to survive a Rule 12(b)(6) motion, a complaint need only allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is

8

CASE NO.: 5:24-cv-1204-FB

inappropriate unless the plaintiff "fails to plead enough facts to state a claim to relief that is plausible on its face." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

Additionally, when a Defendant challenges the court's jurisdiction under Rule 12(b)(1), the burden shifts to the plaintiff who is asserting that jurisdiction does exist. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Federal courts, when reviewing Rule 12(b)(1) motions in the APA context, have held that decided that jurisdiction exists when the plaintiff is challenging a "final agency action" for which there is "no other adequate remedy in a court" as is the circumstance in the instant case. 5 U.S.C. § 704; *Tex. v. United States*, 809 F.3d 134, 177–78 (5th Cir. 2015), as revised (Nov. 15, 2015).

In the APA context, a plaintiff states a plausible claim by alleging facts that, if proven, would allow the Court to conclude that (1) the agency acted contrary to statute, constitutional provision, or regulation, (2) the agency action lacked a reasoned explanation or ignored important aspects of the problem, or (3) the action otherwise falls within section 706's grounds for setting aside agency conduct. *See Tex. v. United States Envt'l. Prot. Agency*, 156 F.4th 523 (5th Cir. 2025) (describing APA review standards); *see also* 5 U.S.C. § 706.

Because APA cases typically turn on the administrative record rather than pleadings-based fact-finding, courts in the Fifth Circuit rarely grant Rule 12(b)(6) motions and instead resolve the cases at summary judgment. *See Amin v. Mayorkas*, 24 F.4th 383 (5th Cir. 2022). Thus, if the complaint plausibly alleges that the agency exceeded its authority, acted arbitrarily or capriciously, or failed to follow required procedures, the motion to dismiss under Rule 12(b)(6) must be denied.

## ARGUMENT

### I.    The SBA OHA Denial Decision is a Final Agency Action

The Defendants' recitation of fact and foundation of their Motion overlooks and omits that the SBA OHA Denial Decision "denying the Appeal meets the requirements of a final agency

9

action subject to review." (Doc. 25 ¶73). There can be no factual dispute that the SBA OHA's Denial Decision is an agency final decision and grants this Court jurisdiction to review Bradfield's APA claim.

The SBA's own PPP regulation authorizes Bradfield's suit in district court. 13 C.F.R. § 134.1211(g) ("***Appeal to Federal district court.*** Final decisions may be appealed to the appropriate Federal district court only.") (emphasis added). Pursuant to 13 C.F.R. § 134.1211(b), "an initial decision shall become the final decision of SBA 30 calendar days after its service." *Id.* at (d). Thus, there is no factual dispute that the SBA OHA Denial Decision is final and opened the door for Bradfield filing of its Amended Complaint in this Court.

The Amended Complaint plausibly alleges that the Final Decision was final agency action reviewable by this Court.  (Doc. 25 ¶¶ 7-12, 71-73). As undisputed by the Motion, the SBA OHA Denial Decision (a) marked "the consummation of the [SBA's] decision-making process;" and (b) determined rights and obligations and caused the legal consequences in recalculating Bradfield's eligibility for its PPP loan. Accordingly, because the regulation conferred jurisdiction this Court to review the SBA's final decision in this matter, the SBA's Motion should be denied as to its 12(b)(1) request.  Doc 25 at Ex. 6. Accordingly, this Court has subject jurisdiction over this matter.

## II.    The IFR is a Final Agency Action.

In their motion, the Defendants presented additional unfounded and factually inaccurate arguments that the Court lacks jurisdiction to hear Bradfield's claim. They are incorrect. A federal court has jurisdiction to resolve disputes concerning federal questions including questions regarding federal rights and laws. 28 U.S.C.§ 1331. Here, Bradfield's question arises under the applicability of the CARES Act and APA. Both federal laws. Congress enacted the CARES Act to create a special class of SBA loans available to a defined group of eligible parties. Notwithstanding Congress' explicit direction to enlarge those entities eligible to receive PPP loans,

the SBA nevertheless improperly restricted eligibility for PPP loans without the statutory authority to do so when it promulgated the Ineligibility Rule as set forth in the IFR effective April 15, 2020.

Because of the immediate nature of implementation, the CARES Act granted the SBA emergency rulemaking authority to implement the Act as passed by Congress. (Doc. 25 ¶ 46). However, that emergency authority did not include a grant of authority to limit eligibility. Despite the Defendants' concession that the CARES Act expanded 7(a) loan eligibility for the PPP loan program, the Defendants nevertheless limited eligibility to render companies employing only independent contractors as ineligible. The SBA's implementation of the Ineligibility Rule results in a Maximum Loan Amount of zero. Said differently, an entity employing only 1099 Workers would have no Payroll Costs according to the SBA. Thus, the Defendants improperly created a new rule limiting eligibility for PPP loans, i.e., the Ineligibility Rule, requiring applicants to employ a *minimum* number of W-2 Employees. The Motion concedes this fact. (Doc. 28 at 8). ("The list of ineligible businesses does not include an entity employing only independent contractors as argued by Bradfield.") 13 C.F.R. § 120.110.) By contrast, the CARES act only made a *maximum* number of employees an eligibility criteria. *See* 15 U.S.C. § 636(a)(36)(2)(D).

Here, by limiting eligibility to entities whose "Payroll Costs" consisted solely of costs incurred for W-2 Employees, the SBA also limited loan eligibility if an applicant also included amounts paid to independent contractors in calculating its Maximum Loan Amount. If Congress' intention was to limit eligibility for loans to only those that had a minimum number of W-2 Employees, the limitation would have been expressly stated in the CARES Act instead of buried in a loan amount calculator.

Thus, contrary to the SBA's assertion that Bradfield failed to identify even one final agency action, the IFR, which contains the Ineligibility Rule, is a final agency action. (Doc 25 at ¶ 36).

CASE NO.: 5:24-cv-1204-FB

Specifically, the Ineligibility Rule is the SBA's redefining of PPP loan eligibility by excluding entities which did not employ any W-2 Employees from being eligible for PPP loans. *Id.* Whether Bradfield could receive loans under other disaster relief loan programs is irrelevant to whether the SBA was delegated authority by Congress to limit eligibility by setting a minimum number of employees as a loan eligibility criterion (Doc. 28 at p. 10). These examples are both congressional expansion of eligibility, rather than the SBA's removal of business concerns. Further, during its oral arguments in *Seville Indus., L.L.C. v. United States Small Bus. Admin.*, 144 F.4th 740 (5th Cir. 2025), the SBA stated on the record that "if you had someone, who at the time that they applied for a loan, only had independent contractors . . . then they wouldn't be able to get a loan." Exhibit 1 (*Seville*, Transcript of Oral Argument at 22:22 – 23:6 (5th Circuit, argued November 5, 2024)). Further, in *Essintial Enterprise Solutions, LLC v. United States Small Bus. Admin.*, No. 25-1367 (3d Cir. filed Feb. 28, 2025), the SBA stated on the record "if you had a small business that only had independent contractors or sole proprietors, they couldn't be able to get a loan." Exhibit 2 (*Essintial*, Transcript of Oral Argument at 39:25 – 40:3 (3rd Cir., argued December 3, 2025)). Thus, despite SBA's efforts here to paint a picture that the IFR, and its Ineligibility Rule, does not preclude companies with only independent contractors from receiving a PPP loan, its own testimony in similar case is inconsistent and creates a clear factual dispute.

The SBA's creation of the Ineligibility Rule through its implementation of the statutory term "Payroll Costs," applies only to certain business concerns, not all PPP loan applicants, and is therefore arbitrary and capricious. *See R.J. Reynolds Vapor Co. v. Food & Drug Admin.*, 65 F.4th 182, 189-90 (5th Cir. 2023). The SBA's inconsistent treatment of similarly situated applicants demonstrates arbitrary and capricious nature of its decision-making. *Id.*

CASE NO.: 5:24-cv-1204-FB

Thus, the SBA's reliance upon the IFR and its application of the Ineligibility Rule to interpret the CARES Act in a manner to recalculate maximum loan amounts at the time of forgiveness, is a judicial determination construing and applying a statute to a case in hand. *Id.*

For the forgoing reasons, Bradfield has presented a final agency action and has plausibly alleged that the SBA exceeded its authority, thus this Court has jurisdiction and should deny the SBA's motion as to its 12(b)(1) request.

**III.    Bradfield has Article III Standing**

Article III standing requires a plaintiff to establish: (1) injury in fact; (2) causation; and (3) redressability. *Transunion LLL v. Ramirez, 594 U.S. 413, 423 (2021)*. Here, despite the SBA's attempts to muddy the water and confuse the facts, Bradfield's arguments clearly articulate each element. First, the SBA's Ineligibility Rule caused the recalculation of Bradfield's eligibility for its PPP loan, thus obligating Bradfield to repay a portion of its loan. Second, the SBA's application of the Ineligibility Rule at the time of Bradfield's forgiveness application resulted in the SBA's new eligibility determination, removing the 1099 employees, and finding Bradfield ineligible for a PPP loan based on 1099 wages paid. Finally, a ruling by this Court finding the SBA's Ineligibility Rule exceeds its authority would redress Bradfield's damages by restoring Bradfield's eligibility for the full amount of its PPP loan and corresponding forgiveness.

Contrary to the SBA's arguments in reliance upon *Bruckner*, Bradfield is not claiming, nor seeking a ruling, that the SBA should forgive a loan that a borrower was ineligible to receive. (Doc. 28 at p.13). This argument by the SBA continues its misguided and factually inaccurate trend of misrepresenting Bradfield's position and arguments. Instead, Bradfield's only argument is that the SBA has exceeded its authority in creating the Ineligibility Rule, because Congress did not authorize the SBA to establish new eligibility criteria. In doing so, the SBA is now, at the time for forgiveness, rendering post-hoc eligibility decisions classified as recalculations of a borrower's

13

maximum loan amount. These recalculations are post-hoc eligibility determinations conducted at the time of forgiveness applications.

There is no dispute that the SBA approved Bradfield for forgiveness for the portions of the PPP loan that the SBA now holds Bradfield as eligible to receive. At no point has the SBA asserted Bradfield failed to spend the PPP loan proceeds as provided under the CARES Act. Instead, prior to making a forgiveness decision, the SBA redetermined Bradfield's eligibility by declaring Bradfield's 1099 as ineligible for loan purposes and then issued a forgiveness decision. (Doc 25 at Ex. 3.) The OHA Denial Decision affirmed the SBA's redetermination of Bradfield's eligibility, and based on that eligibility, the partial forgiveness only for the "eligible" amounts.  (Doc 25 at Ex. 6.)

The SBA's actions imposing the Ineligibility Rule to remove eligibility for Bradfield's 1099 Workers is a clear overreach by the SBA. Based upon the SBA exceeding its statutory authority, Bradfield was injured in its obligation to repay the PPP loan for the amounts the SBA declared Bradfield ineligible.  Bradfield's damages are directly caused by the SBA's Ineligibility Rule. And, if this Court rules in Bradfield's favor, the damages will be redressed. Bradfield has clearly demonstrated that a favorable decision will redress its injury, thus establishing Article III standing. *Inclusive Communities Project, Inc. v. Dep't of Treasury,* 946 F.3d 649, 656 (5th Cir. 2019) (finding Article III standing when a plaintiff is able to show that it is at least likely that the injury will be redressed by a favorable decision). Thus, the SBA's motion should be denied as to Article III standing.

**IV.    Bradfield's Claims are Valid under APA Sections 704 and 706.**

Section 704 of the APA states that "Agency action made reviewable by statute and final agency action for which there is no adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Defendants are arguing that Bradfield failed to address the final agency action. (Doc.

28 at 8). Further, the APA requires that a "reviewing court shall…hold unlawful and set aside agency *action, findings and conclusions* found to be ... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law…." 5 U.S.C. § 706(2) (emphasis added). The question "turns on whether an agency intends to bind itself to a particular legal position." *R.J. Reynolds,* 65 F.4th at 193 (quoting *Tex. v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 441 (5th Cir. 2019) (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)). Furthermore, if the action appears to be binding on its face and is applied by the agency in a way to indicate it is binding or retracts an agency's discretion to adopt a different view of the law, then the action is binding. *Id*. Therefore, even if the decision to deny forgiveness or the IFR is not sufficient, the APA's judicial review provisions clearly extend to other agency pronouncements beyond just substantive rules subject to notice and comment rulemaking. Determining that a borrower is ineligible unless they employ a minimum number (i.e., one) of W-2 Employees, and by extension reducing forgivable loan amounts for the same reason, is a final agency action. Finally, as stated above, the SBA's own rules authorize this suit. 13 C.F.R. § 134.1211(g) ("Appeal to Federal district court. Final decisions may be appealed to the appropriate Federal district court only.")

The Motion claims the Ineligibility rule does not exist, that it is nothing but a figment of Bradfield's imagination to avoid the Fifth Circuit's decision in *Seville*. (Doc. 28 at 8). Unfortunately for the SBA, its own counsel has shown the SBA's hand, i.e., that the SBA requires PPP applicants to have a minimum number of W-2 employees to be eligible for loans, an eligibility requirement the Motion concedes is not included in the CARES Act or the SBA's own regulations. As stated above, in oral arguments for *Seville,* counsel for the SBA clearly confirmed the existence of the SBA's Ineligibility Rule by stating that "If you had someone at the time they applied for the

CASE NO.: 5:24-cv-1204-FB

loan only had 1099 Workers and during the relevant period where you look to your payroll costs then they wouldn't be able to get a loan…the amount they would end up with would be zero." Exhibit 1 at 21:42.  The SBA continued advancing the Ineligibility Rule in *Essential Enterprises v. SBA*, telling the Third Circuit that a business that never had, and only had 1099 Workers would not have been able to get PPP loan, again because its Payroll Costs would be zero. Exhibit 2 at 40:17. The SBA's articulation of the Ineligibility Rule before these courts in these cases convey that the SBA agency action, findings and conclusions that the agency intended for the interpretation of the CARES Act. Thus, rendering the IFR a final agency action with the intention to be binding on PPP loan borrowers who are eligible because they employ W-2 Employees and those who are ineligible because they contract with 1099 Workers.

The SBA has not presented any caselaw, or other argument, that refutes or renders foreclosed Bradfield's arguments that the SBA's claim of "broad authority" to set regulations is not a clear Congressional direction to limit eligibility under *W. Virginia v. Envt'l. Prot. Agency,* 597 U.S. 697 (2022) or *Biden v. Nebraska*, 600 U.S. 477 (2023). Bradfield's claims are not based on a dispute over the CARES Act process for determining forgiveness eligibility, rather it is focused on the SBA's Ineligibility Rule, which has been applied at the time of forgiveness, to exclude business concerns employing 1099 workers or sole proprietors for PPP loans.

The SBA has failed to meet its burden under the 12(b)(6) standard of review. Bradfield has alleged sufficient facts to state a claim for relief that is plausible on its face, the SBA has failed to prove that Bradfield cannot prove any set of facts that would entitle it to relief. Additionally, Bradfield has met its burden to show that this court has jurisdiction to hear this case.  Thus, the SBA's Motion to Dismiss should be denied in its entirety.

CASE NO.: 5:24-cv-1204-FB

## **CONCLUSION/PRAYER**

For the foregoing reasons, Plaintiff, Bradfield Properties Inc. prays this Court deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint in its entirety and for all such further relief to which Plaintiff may be entitled.

Dated: January 20, 2026

Respectfully Submitted,

CLARK HILL PLC

By: */s/ Bret S. Wacker*

Bret S. Wacker (*Pro Hac Vice*)
J. Chris White (*Pro Hac Vice*)
730 17th Street, Suite 420
Denver, CO 80202
Telephone: (202) 772-0906
Facsimile: (202) 772-0905
bwacker@clarkhill.com
jwhite@clarkhill.com

Amy Leila Prueger
Texas Bar No. 24041842
3711 South Mo-Pac Expressway
Building One, Suite 500
Austin, Texas 78746
Telephone: (512) 499-3600
Facsimile: (512) 499-3660
aprueger@clarkhill.com

***ATTORNEYS FOR PLAINTIFF***

17

CASE NO.: 5:24-cv-1204-FB

# EXHIBIT LIST

Transcript of Oral Argument *in Seville Indus., L.L.C. v. U. S. Small Bus. Admin.*, 144 F.4th 740 (5th Cir. 2025)………..………………………………………………………*Exhibit 1*

Transcript of Oral Argument in *Essintial Enterprise Solutions, LLC v. U.S. Small Bus. Admin.*, No. 25-1367 (3d Cir. filed Feb. 28, 2025),……………………………….……*Exhibit 2*

CASE NO.: 5:24-cv-1204-FB

**CERTIFICATE OF CONFERENCE**

I certify that on Plaintiff has complied with this Court's Standing Order, filing its advisory with this Court on December 16, 2025 and amending its complaint on December 23, 2025 after receiving the Defendants' complaints of deficiencies and the basis for its motion to dismiss on December 9, 2025. Plaintiff maintains its First Amended Complaint is not deficient and thus responds to Defendants' motion pursuant to the Standing Order.

*/s/ Bret S. Wacker*
Bret S. Wacker

CASE NO.: 5:24-cv-1204-FB

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of January 2026, a true and correct copy of the foregoing PLAINTIFF BRADFIELD'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS was served via the Court's CM/ECF system, which will send notification of such filing to all counsel of record:

*/s/ Bret S. Wacker*
Bret S. Wacker