IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRADFIELD PROPERTIES INC., *Plaintiff,* vs. UNITED STATES SMALL BUSINESS ADMINISTRATION, ISABELLA CASILLAS GUZMAN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION; JANET YELLEN, IN HER OFFICIAL CAPACITY AS UNITED STATE SECRETARY OF TREASURY; AND UNITED STATES OF AMERICA, *Defendants.* | § § § § § § § § § § § § | 5:24-CV-01204-FB-RBF |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the U.S. Small Business Administration's Motion to Dismiss (the "Motion"). *See* Dkt. No. 28. All pretrial matters in this action have been referred for resolution, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 27. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Motion, Dkt. No. 28, should be **GRANTED**, as Plaintiff Bradfield Properties Inc.'s claims are foreclosed by *Seville Industries, L.L.C. v. United States Small Business Administration*, 144 F.4th 740 (5th Cir. 2025).

**Factual and Procedural Background**

Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act," or the "Act") in 2020 to mitigate the economic damage caused by the COVID-19 pandemic. *Id*. at 742; *see also* Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act granted the Small Business Administration ("SBA") emergency rulemaking authority to implement its provisions "without regard to the notice requirements under section 553(b) of title 5, United States Code." *See* Pub. L. No. 116-136, 134 Stat. 281, Section 1114 (2020).

Part of the Act was the Paycheck Protection Program ("PPP"), which provided the SBA with funding and authority to operate a loan program to help keep small businesses afloat during the pandemic. *Seville*, 144 F.4th at 742-43. To that end, the CARES Act expanded Section 7(a) of the Small Business Act, creating a new class of loans designed explicitly for relief related to payroll costs. *Id*. More specifically, "[t]he PPP authorized the SBA to guarantee covered loans under the same terms, conditions, and processes as a loan made under the usual [Small Business Act] Section 7(a) mechanism." *Id*. at 742 (quotation omitted). And the Act "provided for the forgiveness of these government-guaranteed loans issued under the PPP." *Id*. at 743.

"The PPP allowed eligible applicants to borrow money up to a 'maximum loan amount' using a formula based on its 'payroll costs incurred' the previous year, in all events capped at $10 million." *Id*. (citation omitted). On April 2, 2020, the SBA posted on the SBA and Treasury websites an Interim Final Rule "implementing the PPP within its 15-day deadline." *Id*. at 744. "The IFR explained that the maximum loan amount would be calculated using a payroll-based formula specified in the Act . . . ." *Id*. (cleaned up) (citation omitted). "It clarified that payroll costs consist of compensation to employees in various forms and, for an independent contractor or sole proprietor, they consist of wages, commissions, income, or net earnings from self-

employment." *Id*. (cleaned up) (citation omitted). "It told applicants that independent contractors do not count for purposes of a borrower's PPP loan calculation because they have the ability to apply for a PPP loan on their own." *Id*. (citation internal quotation marks omitted). "Same for loan forgiveness." *Id*. (citation omitted).

According to Bradfield, the SBA's Interim Final Rule "had the effect of improperly and surreptitiously redefining PPP loan eligibility by excluding entities which did not employ any W-2 employees from being eligible for PPP loans . . . through their inability to calculate any Payroll Costs for such W-2 employees under 15 U.S.C. Section 636(a)(36)(A)(viii)(I)(bb)." Dkt. No. 25 (Am. Compl.) at 10; *see also* 85 Fed. Reg. 20811 (Apr. 15, 2020) (the Interim Final Rule, codified at 13 C.F.R. pt. 120). The Interim Final Rule "was effective April 15, 2020[,] and applied to PPP applications through June 30, 2020, or until PPP funds were exhausted." *Seville Indus., L.L.C.*, 144 F.4th at 744.

On April 3, 2020, Plaintiff Bradfield applied for a PPP loan, in the amount of $1,933,359.00. Dkt. No. 25 at 11. "The requested loan amount was based on multiplying Bradfield's average monthly Payroll Costs of $773,343.78 by 2.5," which according to Bradfield was consistent with the "plain language of the CARES Act," SBA guidance, and guidance from both the lender and Bradfield's CPA, but which was inconsistent with the just-posted and not-yet-effective Interim Final Rule. *Id*. at 11. Nonetheless, "Bradfield's calculation of its Payroll Costs, *including costs of compensation paid to independent contractors* reported on IRS Form 1099 . . . was fully disclosed to the Lender and the SBA." *Id*. (emphasis added).

Bradfield's loan application was approved on April 6, 2020. *Id*. The lender, Frost Bank, funded the loan for the requested amount in full, on April 16, 2020. *Id*. at 12. Then, over a year later in September 2021, Bradfield applied for full loan forgiveness. *Id*. at 15. On April 4, 2024,

Bradfield received a final loan decision from the SBA stating that only $530,957.78 of its approximately $1.9 million PPP loan would be forgiven, because the maximum loan amount had been incorrectly calculated when the loan was initially approved and funded. *Id*.

Bradfield appealed to the SBA's Office of Hearings and Appeals. On August 2, 2024, the Office denied the appeal, finding that "[i]n light of this distinction in the CARES Act between employees and independent contractors, as well as the Congressional intent behind the CARES Act, it follows that an employer would calculate its PPP loan based on its employee's payroll costs, as opposed to amounts an employer paid to independent contractors." *Id*. at 17 (alteration in original and citing Dkt. No. 25-6 at 9).

Bradfield sued, alleging by its live complaint that the SBA exceeded its statutory and constitutional authority with the Interim Final Rule, which Bradfield says effectively implemented or contained an "Ineligibility Rule" that unlawfully added ineligibility criteria for PPP loans. *See generally* Dkt. No. 25. After Bradfield filed its original complaint, the SBA moved to stay the case, noting that the Fifth Circuit's pending decision in *Seville* raised virtually the same issues and stating that "[b]ecause the Fifth Circuit's decision in *Seville* will be dispositive here, Defendants seek to stay this case pending the Fifth Circuit's resolution of *Seville*." Dkt. No. 16 at 1 (footnote omitted). The motion was unopposed. *Id*. The District Judge granted the motion and stayed the case. Dkt. No. 17.

The Fifth Circuit decided *Seville* comprehensively in favor of the SBA, and the stay here was lifted. Bradfield then filed its Amended Complaint, Dkt. No. 25, which somewhat modifies its theory of the case and is the live pleading. Bradfield then moved to stay the case again during the pendency of a Petition for a Writ of Certiorari in *Seville*. Dkt. No. 31. In the Motion to Stay, Bradfield acknowledged *Seville*'s "potential dispositive effect" on the case at bar. *Id*. at 5.

"Should the petitions for certiorari be denied, then the decisions of the Fifth and Sixth Circuit will stand. In that event, Bradfield's arguments regarding the meaning of 'Payroll Costs' become more tenuous, if not moot," the motion candidly acknowledged. *Id*.

The Supreme Court denied the cert. petition. *See* Dkt. No. 36. No stay was granted in this case, *id*., and a scheduling order was entered. Dkt. No. 40. The scheduling order contemplated that its deadlines only become relevant if the Motion to Dismiss is denied in some part. *Id*.

**Analysis**

As discussed in more detail below, the Court has jurisdiction over a challenge to the SBA's final agency actions in this matter. But Bradfield has failed to state a claim for relief in light of *Seville*'s holding on materially identical facts. The Motion to Dismiss should be granted, and the matter should be dismissed in its entirety.

**A. The Court Has Jurisdiction Over a Challenge to The SBA's Final Agency Actions, Insofar As They Exist In This Case.**

The Administrative Procedure Act ("APA") provides district courts with jurisdiction to review a "final agency action" by a federal agency. *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir. 1982); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 636-37 (5th Cir. 2023). "Agency action is final when it meets two requirements: (A) the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature; and (B) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Clarke*, 74 F.4th at 637 (citation and internal quotation marks omitted). Here, Bradfield's live complaint asks the Court to set aside the SBA's final loan decision and, by implication, the SBA's Office of Hearings and Appeals decision upholding the denial of loan forgiveness in the full amount of the loan granted. *See* Dkt. No. 25; *see also* Dkt. No. 29 at 10 ("There can be no factual dispute that the SBA OHA's Denial

Decision is an agency final decision and grants this Court jurisdiction to review Bradfield's APA claim.").

Such a decision by the SBA's Office of Hearings and Appeals is a paradigmatic "final agency action" reviewable in this Court. *See* 13 C.F.R. § 134.1211(g) ("Appeal to Federal district court: Final decisions may be appealed to the appropriate Federal district court only."); *see also id*. at (b) (" . . . an initial decision shall become the final decision of SBA 30 calendar days after its service."). To the extent that Bradfield challenges the Interim Final Rule (as opposed to the "Ineligibility Rule") as exceeding the SBA's constitutional or statutory authority, the Interim Final Rule is also a "final agency action." Despite its title as an "interim" rule, the Interim Final Rule reflects the consummation of the agency's decisionmaking process and was basis on which loan forgiveness was determined, *i.e.*, an action by which rights and obligations were determined. *See* 85 Fed. Reg. 20811 (Apr. 15, 2020) (codified at 13 C.F.R. pt. 120).

Accordingly, Bradfield's live pleading, in substance, attacks two final agency actions: (1) the Interim Final Rule and (2) the Office of Hearings and Appeals' August 2, 2024, ruling on loan forgiveness. And the Court has jurisdiction over those challenges.

**B. Familiar Standards Govern the Rule 12(b)(6) Motion to Dismiss.**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a case in which the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotations and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555-56). These factual allegations need not be highly detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim. *See id*. at 555-56. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Additionally, under the APA, a court reviewing a "final agency action" must "hold unlawful and set aside agency action" if an agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Fort Bend Cnty. v. United States Army Corps of Eng'rs*, 59 F.4th 180, (5th Cir. 2023) (applying the ordinary 12(b)(6) standards in the APA § 706 context).

**C. Bradfield Has Failed to State a Claim for Relief.**

Bradfield's requests for relief are squarely foreclosed by *Seville*. In *Seville*, the Fifth Circuit undertook a rigorous textual analysis of the CARES Act and rejected the plaintiff-

appellant's argument concerning the meaning of "payroll costs." *Seville*, 144 F.4th 740. The Court specifically rejected the argument that the Interim Final Rule "changed" the meaning of "payroll costs." *Id*. at 750. The argument that it did is fundamental to Bradfield's position here, which is that the SBA effectively changed the rules in the middle of the process. According to this argument, the SBA approved Bradfield's loan application under one rubric and then rejected full reimbursement under a new, different rubric.

The Fifth Circuit in *Seville* explained that the SBA didn't change the meaning of "payroll costs" via the Interim Final Rule; "the term *always excluded payments to independent contractors*." *Id*. (emphasis added). "The [Interim Final Rule] was an interpretive rule that merely 'advise[d] the public of the agency's construction of the statutes and rules which it administers.'" *Id*. (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)). "So the SBA's decision not to forgive Seville's loan," the Fifth Circuit explained, "[wa]s 'no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.'" *Id*. (quoting *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 135 (1936)). The same is true here with respect to the SBA's decision not to forgive all of Bradfield's loan, as well as the eligibility requirements initially in place. Indeed, the facts presented here, including the timeline, are materially identical to those presented in *Seville*, and any distinctions are of the type that would make no difference to the outcome.

Moreover, implicit in *Seville* and essential to its holding is the notion that the SBA didn't exceed its constitutional or statutory authority when implementing the Interim Final Rule. That conclusion is inevitable, regardless of the effect the Interim Final Rule might have had on businesses that applied for PPP loans thinking that payments to independent contractors could be factored into payroll costs. *Cf.* Dkt. No. 25 (arguing that the SBA violated separation-of-powers

principles and the APA). The holding in *Seville* requires the conclusion that the SBA's actions here were within its power and authority to interpret the statute and rules it administers. *Seville Indus., L.L.C.*, 144 F.4th at 750.

This is fatal to Bradfield's theory of the SBA's rulemaking and interpretive actions in this instance. Bradfield's invention of an "Ineligibility Rule" is an attempt to recast the SBA's lawful construction of the CARES Act. But the SBA never "added" eligibility requirements into the CARES Act, no additional eligibility requirements were imposed *post hoc*, and no "Ineligibility Rule" was ever promulgated. The SBA's Interim Final Rule, therefore, rests on solid legal ground, as does its final loan decision, and they are *ipso facto* not arbitrary, capricious, an abuse of discretion, or otherwise unlawful. *See* 5 U.S.C. § 706. Thus, Bradfield has failed to state a claim for relief, and the Court should grant the SBA's Motion to Dismiss.

Bradfield's Amended Complaint is an (unsuccessful) attempt to plead around *Seville*'s holding by reframing and renaming the Interim Final Rule as an "Ineligibility Rule," making the case about "eligibility" instead of "loan forgiveness." The Ineligibility Rule, says Bradfield, retroactively interpolated into the CARES Act new loan eligibility requirements (or, ineligibility rules) that didn't exist when Bradfield completed and submitted its loan application. *See, e.g.*, Dkt. No. 25 at 23 (writing that "the SBA established the Ineligibility Rule in the IFR . . . ."). But as already discussed, this endeavor cannot withstand *Seville*'s holding and logic. No matter how Bradfield pleads its claims, relief of the type sought here by Bradfield is foreclosed by *Seville*, and Bradfield's voluminous argument to the contrary cannot escape that fact.

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that the SBA's Motion to Dismiss, Dkt. No. 28, be **GRANTED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex. Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an

aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

**IT IS SO ORDERED**.

**SIGNED** this 28th day of August, 2026.

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**